Frank DeCARLO, Joseph Petrillo, James V. Lombardo, Joseph Kusovich, and James Barone, Plaintiffs,

v.

ROCHESTER CARPENTERS PENSION, ANNUITY, WELFARE AND S.U.B. FUNDS, Defendants.

No. 91–CV–6405T.

United States District Court, W.D. New York.

May 24, 1993.

Michael J. Townsend, Davidson, Fink, Cook & Gates, Rochester, NY, for plaintiffs.

Michael T. Harren, Chamberlain, D'Amanda, Oppenheimer & Greenfield, Rochester, NY, for defendants.

## DECISION AND ORDER

TELESCA, Chief Judge.

### INTRODUCTION

Plaintiffs, all retired members of Rochester Carpenters Union Local 85, brought this action pursuant to the civil enforcement provision of ERISA, 29 U.S.C. § 1132, seeking pension benefits they allegedly have not received due to an alleged breach of fiduciary duty by the Trustees of the defendant Funds. Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Jurisdiction in this Court is provided by 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331.

For the reasons set forth below, I find that there are no material factual issues, and that as a matter of law, defendants have not breached a fiduciary obligation to plaintiffs. Moreover, I conclude that, as a matter of law, the so-called "thirteenth check" is not a permanent benefit, and thus may be paid in *any* year in which circumstances exist to support such payments without creating a vested right or expectancy as a regular benefit.

### BACKGROUND

The following material facts are not disputed by the parties. The Rochester Carpenters Pension Fund ("the Pension Fund"), is a multiemployer employee benefit plan pursuant to ERISA, 29 U.S.C. § 1002(37)(A). Although the complaint names two related funds as defendants, all of the allegations in the complaint refer only to the Pension Fund.

The Pension Fund is administered by a board of trustees consisting of four trustees appointed by the three participating carpenter local unions, and four trustees appointed by an employer association, the Building Trades Employer Association. The Trustees at all times relevant to this action relied upon an actuary's estimates of costs, liabilities, rates of interest, and other factors to determine the funding requirements for the Pension Plan. Unlike a single employer pension fund, multi-employer pension funds receive contributions for each hour worked by active participants. Contribution levels are set through collective bargaining in advance of the work being done. The actuary therefore must project employment levels for the upcoming year.

At various times between 1986 and 1990, the Pension Fund's annual actuarial valuation revealed a projected overfunding (called a "margin"). Based upon an analysis made by the actuary of the various benefit improvements which could be made given the overfunding, the Trustees on February 19, 1987 increased the rate at which retirement benefits would accrue for active participants from $7.60 to $8.50 per month for each service credit earned since 1966. However, this benefit applied only to those active participants who retired after January 1, 1986, the date of the most recent actuarial valuation. Plaintiffs all retired prior to that date.

For the plaintiffs and other participants who had already retired, the Trustees voted to pay each of them an additional one month's benefit, referred to as a "thirteenth check." The cover letter accompanying this check indicated that it was a "one-time payment," equal to 8.3% of the pensioner's annual benefit.

There was no benefit increase in 1987. On November 10, 1988, the Trustees increased the accrual rate for active participants from $8.50 to $9.00 effective for those members retiring after January 1, 1989. Again, pensioners who were not eligible for this benefit received another thirteenth check as of December, 1988.

On November 7, 1989, the Trustees again improved the accrual rate for active participants, increasing the rate to $10.50 for all active participants who retired after January

1, 1990. Plaintiffs and other retiree participants received another one-time thirteenth check in December, 1989.

On November, 20, 1990, the Trustees increased the accrual rate from $10.50 to $11.50, effective for all active participants who retired after January 1, 1991. However, the Trustees decided not to award a thirteenth check to plaintiffs, but instead increased the benefits payable to plaintiffs and others similarly situated by a permanent 5%, retroactive to January, 1990.

The decision not to award a thirteenth check was influenced by a warning from the actuary, who indicated that awarding a third consecutive thirteenth check could cause the IRS to consider this a "regular" benefit requiring permanent funding. Under ERISA's "anti-cutback" provisions, such a ruling would mean that the Trustees could not reduce that improvement with respect to those participants and retirees who had become vested with that improvement. Subsequently, thirteenth checks were paid to plaintiffs in 1991 and 1992. The Trustees do not intend to issue a thirteenth check this year because of the prohibition against three consecutive payments.

Thus, plaintiffs have received five thirteenth checks (an 8.3% benefit each year), as well as a permanent five percent increase in benefits effective January 1, 1990. In this action, they argue that the Trustees have violated their fiduciary duty by instituting benefit increases which favor current workers over those who have already retired. Plaintiffs also take the position that the thirteenth check was meant to be permanent, and thus the Trustees violated their fiduciary duty by not paying the benefit for 1987 or 1990, and will violate their duty by not paying the benefit this year. Plaintiffs also allege that certain employee trustees have an inherent conflict of interest because the actions they take as trustees will benefit themselves as future retirees.

## DISCUSSION

### I. Summary Judgment

■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.*

### II. The Legal Standard

■ A court, in deciding whether trustees have violated the common law-based fiduciary obligations that ERISA imposes, 29 U.S.C. § 1104, will simply ask whether their decisions are "arbitrary and capricious in light of the trustees' responsibilities to all potential beneficiaries." *Cleary v. Graphic Communications Int'l Union Supplemental Retirement and Disability Fund*, 841 F.2d 444, 449 (1st Cir.1988); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (standards from common law of trusts are " 'applicable to [ERISA] fiduciaries' ") (citation omitted). The ordinary "arbitrary and capricious" standard is applicable even where "the trustees exercised clearly granted discretion to benefit one group of beneficiaries more than another, and the trustees benefited from that action as members of the much larger, favored group." *Mahoney v. Board of Trustees*, 973 F.2d 968, 971 (1st Cir.1992).

■ I conclude that the Trustees of the Pension Fund possessed such discretion in this case, and that the "arbitrary and capricious" standard is the applicable standard of review of their actions. The Agreement and Declaration of Trust dated October 26, 1976 vests broad discretionary powers in the Trustees. The Trustees have "exclusive authority and discretion to manage and control the assets of the Trust," (Ex. A to Lucci Affidavit, Art. II, § 1(d)), including "being empowered to do all acts whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish the general objectives of maintaining the plan

solely in the interests of the participants and beneficiaries for the exclusive purpose of (1) providing benefits to participants and beneficiaries; and (2) defraying reasonable expenses of administering the plan." *Id.*, Art. V, § 5.

## III. The Standard Applied

In construing an agreement similar to the one in issue here, the Fourth Circuit concluded that, absent specific limitations on the trustees' powers, trustees have the power to increase benefits, and that "in the absence of a fiduciary breach, it is for the trustees and not the courts to determine the extent of any benefit increase...." *Bidwill v. Garvey*, 943 F.2d 498, 505 (4th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1182, 117 L.Ed.2d 425 (1992). The issue, then, is whether the trustees acted "arbitrarily and capriciously" by instituting benefit increases which favored current workers over those beneficiaries who were already retired.

The First Circuit recently addressed this issue, and concluded that, in the absence of some special circumstance, it does not seem arbitrary and capricious for trustees to promise current workers much larger pension increases than those paid to workers who have already retired. *Mahoney v. Board of Trustees*, 973 F.2d at 973. There, the monthly pension of a longshoreman who had retired went from $750 per month to $875, while the pension promised to a longshoreman who was still at work in 1990 went from $750 to $1575. Because of the mix of retired to working longshoremen (600 retired, 350–500 still at work), $8 million of the $12 million overfunding went to retired workers while the balance went to active workers. The court, relying on a similar ruling of the Ninth Circuit[1], and upon the fact that employees still working (and their employers) will be primarily responsible for funding future contributions, held that trustees may lawfully increase benefits promised to workers not yet retired without increasing the benefits of those who have already retired.

 Here, the Trustees reviewed statistics on the participants in the Pension Fund and found that, as of January, 1987, there were 492 pensioners and 22 beneficiaries of deceased participants compared with 709 active workers with more than one year of service. (Pettengill Affidavit, paragraphs 21–22). The active employees had an average age of 42½ years with an average of almost 20 years to retirement. (*Id.*, at paragraphs 22–23). The trustees consulted with an actuary and chose an option which favored active workers. Under such circumstances, I find that the Trustees did not act arbitrarily or capriciously, and thus did not violate their fiduciary obligations to the retired participants in the Pension Fund.

## IV. The "Thirteenth Check" as a Permanent Benefit

Plaintiffs argue that the thirteenth check which they received in five of the last six years is a permanent benefit, which should not have been denied in 1990. This argument is without merit. The cover letter accompanying each benefit check specifically stated that the payment was not a permanent benefit. Moreover, the Internal Revenue Service Revenue Ruling cited by the plaintiffs does not provide support for their position.

 The Internal Revenue Code, 26 U.S.C. § 411(d)(6)(A), provides that, subject to exceptions that are not relevant here, a qualified retirement plan may not be amended to reduce the accrued benefit of any participant. Where "an employer establishes a pattern of repeated plan amendments ... for substantially consecutive, limited periods of time, such benefits will be treated as provided under the terms of the plan, without regard to the limited periods of time...." Treas.Reg. § 1.411(d)–4, Q & A–1(c)(1). Thus, a benefit which the trustees intend to be temporary may be deemed to be permanent by the IRS if paid for consecutive periods. Whether the payment of a thirteenth check by the Pension Fund trustees in three or more consecutive years

constitutes a pattern of amendments within the meaning of § 1.411(d)–4 of the regulations is *determined on the basis of the*

---

1. *Toensing v. Brown*, 528 F.2d 69 (9th Cir.1975).

120

*facts and circumstances.* Although no one particular fact is determinative, relevant factors include: (i) whether the amendments are made on account of a specific business event or condition; (ii) the degree to which the amendment relates to the event or condition; and (iii) whether the event or condition is temporary or discrete or whether it is a permanent aspect of the employer's business.

Rev.Rul. 92–66, 1992 IRB LEXIS 424 at 6–7. (emphasis added).

Contrary to plaintiffs' assertion that "there was no temporary, discrete or specific event leading to the issuance of the thirteenth check," the facts and circumstances here indicate that payment of a thirteenth check in any particular year is absolutely conditioned upon the existence of an overfunding condition, which is obviously a function of investment performance. The determination by the Trustees as to whether a thirteenth check may be paid is specifically made with reference to an annual actuarial valuation, which I interpret to be a "business event or condition" within the meaning of the regulations. Such payments are thus justified by discrete special circumstances, and there is no guarantee that these circumstances will exist in the next consecutive year. Accordingly, I find as a matter of law that the payment of a thirteenth check does not confer a permanent benefit within the meaning of § 411 of the Internal Revenue Code, and thus such payments may be made in *any* year, including consecutive years, in which they are justified by "business conditions."

## CONCLUSION

For the reasons set forth above, there are no material facts in dispute, and thus I find as a matter of law that the trustees of the Pension Fund did not act arbitrarily or capriciously in establishing benefit increases favoring active participants of the Pension Fund. I also find, as a matter of law, that the thirteenth check paid to plaintiffs as retired participants is not a permanent benefit and thus may be paid in any year in which circumstances support such action by the trustees without creating a vested right or expectancy thereto as a regular benefit. Ac-

cordingly, defendants' motion for summary judgment is granted and this action is dismissed.

ALL OF THE ABOVE IS SO ORDERED.