CHICAGO DISTRICT COUNCIL OF CARPENTERS PENSION FUND, et al., Plaintiffs,

v.

EXHIBITION CONTRACTORS COMPANY, INC., Defendant.

No. 84 C 5592.

United States District Court, N.D. Illinois E.D.

Sept. 11, 1985.

Albert M. Madden, Hugh J. McCarthy & Associates, Ltd., Chicago, Ill., for plaintiffs.

Bruce R. Alper, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant.

## MEMORANDUM ORDER

BUA, District Judge.

The Court's jurisdiction in this case is predicated on § 502 of the Employees Retirement Income Security Act, 29 U.S.C. § 1132. At issue is whether the defendant employer owes delinquent contributions to the plaintiff trust funds. Both parties have filed cross-motions for summary judgment. For the reasons stated herein, the plaintiffs' motion for summary judgment is granted and the defendant's cross-motion is denied.

## I. FACTS

The plaintiffs in this action are the trustees of three employee fringe benefit trust funds: The Chicago District Council of Carpenters Welfare Fund, the Chicago District Council of Carpenters Pension Funds, and the Chicago and Northeast Illinois District Council of Carpenters Apprentice and Trainee Program Fund (hereinafter the "Trust Funds"). The Trust Funds receive multiemployer contributions for the purpose of providing health, welfare, pension, and training benefits for members of the Chicago and Northeast Illinois District Council of Carpenters, a carpenters' labor union (the "Union"). As such, the Trust Funds are subject to the statutory provisions of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186, and the Employees Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

The defendant, Exhibition Contractors Company Inc., is a company engaged in the business of storing, warehousing, and dismantling equipment used in trade shows. In the past, the defendant employed a number of Union members and was an employer contributor to the Trust Funds.

Both parties to this dispute have agreed to a statement of stipulated facts. On July 18, 1975, the defendant signed a one-page agreement with the Union. Under the terms of such agreement, the defendant agreed to be bound by the terms of the Trust Funds and a series of Collective Bargaining Agreements entered into by the Mid-America Regional Bargaining Association and the Union. The Collective Bargaining Agreements (hereinafter the "Bargaining Agreements") obligated the defendant to make fringe benefit contributions to the Trust Funds in a prescribed amount "for each hour worked for Employer by all of those of his employees who are covered by this Agreement." (Exhibits E, F, G and H, Sections 12.1, 13.1, 14.1). Accordingly, between June of 1978 and June of 1983, the defendant made fringe benefit contributions on behalf of its Union employees.

The dispute in this case arises because the defendant's contributions were made in two separate ways. First, contributions were made in the prescribed amount under the Bargaining Agreement for each hour of "bargaining unit" work. As defined under the Bargaining Agreements, bargaining unit work referred to "carpentry-type" work (i.e., the setting up and dismantling of booths). Under a second method, contributions were made in a lesser amount for each hour worked by those same employees engaged in "nonbargaining unit" work. Nonbargaining unit work, as defined by the defendant, meant noncarpentry work (i.e., loading and unloading trucks and clean-up work). Contributions for nonbargaining unit work were based on the applicable Freight Handlers Union contribution rate. Since the Freight Handlers contribution rate was always less than the rate provided under the applicable Bargaining Agreements, the defendants contributed less benefits for each hour of nonbargaining unit work. In short, employees received less fringe benefits when performing noncarpentry work than when performing carpentry work. In accordance with such methods, the defendant maintained two separate payroll records for each employee. One based on the number of bargaining unit hours and another reflecting nonbargaining unit hours.

In November of 1983, pursuant to the trustees' request, the defendant's payroll

and other records were audited for the period covering June 1978 through June 1983. The audit revealed the defendant's "two-tier" method of making fringe benefit contributions. In response, the plaintiffs informed the defendant that contributions would have to be remitted to the Trust Funds in accordance with the contribution rate prescribed in the Bargaining Agreement. The plaintiffs concluded that contributions should have been made in the prescribed amount for nonbargaining unit work as well as bargaining unit work. The present action was then instituted alleging the defendant's contribution methods were in breach of the Collective Bargaining and Trust Agreements.

Both parties agree on the issues presented in this case. First, what standard the Court should apply in reviewing the trustees' interpretation of the Collective Bargaining and Trust Agreements. Second, under the terms of the Collective Bargaining and Trust Agreements, whether the defendant had a contractual obligation to make fringe benefit contributions for hours worked by employees engaged in nonbargaining unit work.

## II. DISCUSSION

In support of a motion for summary judgment, the moving party must demonstrate a lack of dispute as to any genuine issue of material fact. *Gracyalny v. Westinghouse Electric Co.*, 723 F.2d 1311, 1316 (7th Cir.1983). In reviewing the record on a motion for summary judgment, the Court gives the nonmoving party the benefit of all doubts and reasonable inferences that can be drawn in its favor. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.1983).

In the present case, the parties have agreed to a statement of material facts. The central issue is the defendant's contractual obligation to make fringe benefit contributions.

### A. *Standard of Review*

The initial issue in this case is what standard the Court should apply when reviewing the trustees' interpretation of the Trust and Bargaining Agreements. The trustees contend that the Court's review is limited to determining whether the trustees' decision was arbitrary and capricious. The defendant, however, claims that the interpretation of collective bargaining and trust agreements is an issue of law which is freely reviewable by this court. In light of the overwhelming weight of authority, this Court will apply an arbitrary and capricious standard in reviewing the trustees' decision.

█ It is well settled that trustees of pension plans have full authority and broad discretion in dealing with questions involving benefit coverage and eligibility. *Adams v. N.J. Brewery Emp. Pen. Trust Fund*, 670 F.2d 387, 388 (3d Cir.1982); *Johnson v. Botica*, 537 F.2d 930 (7th Cir. 1976). The Court's role is limited to ascertaining whether the trustees' decision is arbitrary, capricious, or an abuse of discretion. *Martinez v. Swift and Company*, 656 F.2d 262 (7th Cir.1981); *Rosen v. Hotel and Restaurant Employees and Bartenders Union of Phila.*, 637 F.2d 592 (3d Cir. 1981); *Tomlin v. Board of Trustees*, 586 F.2d 148 (9th Cir.1978); *Nelson v. Joyce*, 404 F.Supp. 489 (N.D.Ill.1975). In other words, the sole limitation on the trustees is that their actions are not made in bad faith when considered in light of the pension plans' language. *Wardle v. Central States*, 627 F.2d 820 (7th Cir.1980); *Bayles v. Central States, Southeast, Etc.*, 602 F.2d 97 (5th Cir.1979); *Bueneman v. Central States, Southeast & Southwest*, 572 F.2d 1208 (8th Cir.1978).

In the present case, the terms of the Trust Funds state that:

The Trustee shall have the power to: Construe the provisions of this instrument and any amendment of it as well as the pension plan formulated by them and any amendment of it and the construction adopted by the trustees acting in good faith shall be binding upon the Council, the Association, the unions and all employers and employees;

*Pension Fund Trust* (Ex. B). Art. VI, § 2; *see also Welfare Fund* (Ex. C), Art. IV and *Apprentice and Trainee Program* (Ex. D) Art. VI.

In addition, each of the Bargaining Agreements provides that:

12.2 The Employer agrees to be bound by the Agreement and Declaration of Trust establishing the Chicago District Council of Carpenters Health and Welfare Fund, by any present and future amendments thereto and irrevocably designates as his representative on the Board of Trustees such Trustees as are named in said Agreement and Declaration of Trust, as Employer Trustees, together with their successors selected in the manner provided in said Agreement and Declaration of Trust as it may be amended from time to time, and agrees to be bound by all action taken by said Employer Trustees pursuant to the said Agreement and Declaration of Trust as amended from time to time.

*See Collective Bargaining Agreements,* (Exhibits E, F, G and H) Art. XII, §§ 12.2, 13.2, 14.2.

In the case at bar, the trustees are given the exclusive authority to construe the provisions of the Trust Funds. Furthermore, as provided in the Trust and Bargaining Agreements, the defendant employer has been given adequate representation on the Board of Trustees. The trustees are in the best position to fairly ascertain the meaning of the Trust and Collective Bargaining Agreements. The Court is therefore extremely hesitant to interfere with the trustees' interpretation of the plan. *Bueneman,* 572 F.2d at 1209 (8th Cir.1978).

The defendant relies exclusively on *Central States etc. v. Central Transport, Inc.,* 698 F.2d 802 (6th Cir.1983), for the proposition that this Court should apply a *de novo* standard in reviewing the trustees' decision. The Court finds the defendant's argument to be unpersuasive. In *Central States,* the court was never faced with the issue of what standard it should apply in reviewing the trustees' decision regarding pension benefits. Therefore, the holding in *Central States* is distinguishable from the facts in this case. The defendant points to language in *Central States* which indicates that the interpretation of bargaining and trust agreements raises freely reviewable

issues of law. *Central States, supra,* 698 F.2d at 805. However, the court in *Central States* also concluded that the trustees' decision interpreting such agreements was subject to an arbitrary and capricious standard. *Id.* at 806.

█ In this case, the Court is reviewing the trustees' interpretation of the Trust and Bargaining Agreements. Therefore, the Court concludes that the trustees' decision should only be disturbed if it is arbitrary and capricious.

## B. *The Trust and Bargaining Agreements*

The fundamental issue presented is whether the trustees' interpretation of the Trust and Bargaining Agreements is arbitrary and capricious. The plaintiffs contend that their decision is supported on several grounds. First, the plaintiffs point to their statutory duty to operate the Trust Funds solely for the benefit of the employees. Second, the plaintiffs' decision deters the defendant from "inaccurately" segregating bargaining unit and nonbargaining unit hours. Third, and foremost, the plaintiffs believe that the language of the Trust and Bargaining Agreements supports their interpretation.

The defendant argues that it is obligated to pay fringe benefit contributions only when an employee performs bargaining unit work. Under the Bargaining Agreements, an employer is obligated to pay contributions "for each hour worked for Employer by all of those of his Employees who are covered by this Agreement." The defendant asserts that, by their express terms, the Bargaining Agreements and Trust Funds cover only employees who perform bargaining unit work. Therefore, the defendant concludes that no obligation exists to contribute for nonbargaining unit work. In short, the defendant contends that the trustees' decision is contrary to the plain language of Trust and Bargaining Agreements.

█ In reviewing the trustees' decision, it must be remembered that a pension plan is a contract between an employer and its employees. *Audio Fidelity v. Pension*

*Ben. Guaranty Corp.*, 624 F.2d 513 (4th Cir.1980); *Monsanto Co. v. Ford*, 534 F.Supp. 51 (D.C.Mo.1981); *see also Childs v. National Bank of Austin*, 658 F.2d 487 (7th Cir.1981). When applying the arbitrary and capricious standard to the trustees' action regarding a pension plan, the Court will look to a number of factors. *Dennard v. Richards Grays Inc.*, 681 F.2d 306 (5th Cir.1982); *Donovan v. Carlough*, 576 F.Supp. 245 (D.D.C.1983) *aff'd.*, 753 F.2d 166 (D.C.Cir.1985). In both *Dennard* and *Donovan*, the courts enumerated several factors to be considered in reviewing the trustees' decision regarding pension plan benefit payments. These factors include: (1) whether the trustees' interpretation [of the pension plan or trust] is contrary to the plain language of the provision in question; (2) whether the trustees' interpretation is consistent with the purposes of both the disputed provisions and overall plan; (3) whether the trustees' interpretation renders other provisions of the plan superfluous. *Donovan, supra*, 576 F.Supp. at 249; *Dennard, supra*, 681 F.2d at 314.

■ In the present case, the provision covering contributions provides that:

Each Employer working in the jurisdiction of the Chicago District Council shall pay into the Chicago District Council of Carpenters Welfare Fund (hereinafter referred to as "Health and Welfare Fund"):

$0.78 per hour effective June 1, 1976 for each hour worked for Employer by all of those of his Employees who are covered by this Agreement.

An employer must contribute to the fund for each hour worked by an employee covered under the agreement. The question is whether the employee is covered under the Bargaining Agreement.

The Bargaining Agreement clearly states that it covers all members of the Carpenters Union. The Agreement does not state that only Union members performing "carpentry-type" work are covered. In fact, a close reading of the Bargaining Unit clause shows that the unit consists of Union employees engaged in work "including, but

not limited to" carpentry work. This indicates that the Bargaining Unit clause was not intended as an "all-inclusive" provision. In short, the Court finds that the Agreement covers all work performed by members of the Carpenters Union who were employed by the defendant.

Each Trust Fund requires that:

Each employer shall pay to the trustees an amount equal to sixty-three cents per hour for each hour of work for an employer party hereto by any employee on whose behalf any local union acts as a collective bargaining agent.

The contributions, as aforesaid, shall accrue with respect to all hours worked by any employee.

Art. IV (Exhibits B & D), *Pension Fund and Apprentice Fund Trust;* Art. III (Exhibit C), *Welfare Fund Trust.*

Thus, each trust fund requires contributions for each hour worked by a Union employee, regardless of the type of work performed. This plain language is consistent with the trustees' interpretation of the Bargaining Agreements.

In addition, the trustees' interpretation is consistent with the purposes of the Trust Funds and Bargaining Agreements. Such purpose is to provide health, welfare, and pension benefits to the employee beneficiaries and their families in such form as trustees may determine. Art. 12.3 of Exhibits E, F, G and H. The trustees' decision clearly carries out this policy.

■ Where the provisions of a pension or trust fund are subject to more than one reasonable interpretation, the courts will not substitute their judgment for the trustees. *Childs v. National Bank of Austin*, 658 F.2d 487 (7th Cir.1981); *Gordon v. ILWU–PMA Ben. Funds*, 616 F.2d 433 (9th Cir.1980); *Tomlin v. Board of Trustees, etc.*, 586 F.2d 148 (9th Cir.1978). In *Tomlin*, the Ninth Circuit Court of Appeals stated:

We must be ever mindful that it is for the Trustees, not the courts, to choose between two reasonable alternatives. As the court said in *Roark v. Lewis*, 130 U.S.App.D.C. 360, 364, 401 F.2d 425, 429 (1968): "The court is fully cognizant of

the internal pressures asserted on the trustees: the size of the pie is fixed and variations can be achieved only by changing the size of the number of the slices. There is no camouflaged design on the part of the Court to second-guess the discretionary judgments of the trustees.... It is for the trustees, not judges, to choose between various reasonable alternatives."

*Tomlin, supra,* 586 F.2d at 151.

In the present case, the Court finds that the trustees have reasonably interpreted the Trust and Collective Bargaining Agreements. In view of the above principles, the Court will not disturb the trustees' decision.

### III. CONCLUSION

For the reasons stated above, the plaintiffs' motion for summary judgment is granted and the defendant's cross-motion for summary judgment is denied.

IT IS SO ORDERED.