**Cedric CLARK, Plaintiff–Appellee,**

v.

**WASHINGTON TEAMSTERS WELFARE TRUST, Defendant–Appellant.**

**No. 92–35054.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 31, 1993.

Decided Nov. 5, 1993.

Russell J. Reid and Kim Williams, Davies, Roberts, and Reid, Seattle, WA, for defendant-appellant.

James K. Adams, Almon, Berg and Adams, Yakima, WA, for plaintiff-appellee.

Before: J. WALLACE, BOOCHEVER, and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Cedric Clark brought suit against the Washington Teamsters Welfare Trust (the Trust) seeking to establish his right to health benefits under the Trust. The district court gave summary judgment for Clark. The Trust appealed. We reverse the district court and direct that judgment be entered for the Trust.

## BACKGROUND

Clark is the president of the Yakima County Beverage Company (the Company), which delivers beer and wine to taverns, grocery stores and cocktail lounges primarily in Yakima County, Washington. Clark started the business in 1961 and the business was incorporated in the mid–1960s. Clark and his wife are the corporate officers and the shareholders of the Company.

The Company has a collective bargaining agreement with Local 524 of the International Brotherhood of Teamsters, Shippers, Warehousemen and Helpers of America (the Teamsters). The agreement, inter alia, provides that Local 542 is the exclusive bargaining representative for all employees of the Company except those listed in Article 1(C) of Appendix C of the agreement; the exceptions include supervisors "not engaged in bargaining unit work" and owners "not engaged in bargaining unit work." Article 10 provides: "Supervisors shall not perform any work covered by this Agreement or accrue any benefits under this Agreement unless they are members of the Local Union. Except as specifically provided in this Section, no person who is not a member of the bargaining unit shall perform any work covered by this Agreement."

Article 12 of the collective bargaining agreement is entitled "HEALTH CARE BENEFIT PLANS" and provides: "The Employer shall pay each month into the following employee health care benefit plans, on account of each member of the bargaining unit who was compensated for eighty (80) hours or more in the preceding month."

Article 13 is entitled "PENSION PLAN" and provides: "The Employer shall pay each month into the Western Conference of Teamsters Pension Trust Fund on account of each member of the bargaining unit, for each hour for which compensation is paid to him, but not to exceed one hundred seventy-three (173) hours for such calendar month."

Article 17 provides in part: "The Employer further agrees that the employer-trustees named in the said trusts, and their successors in trust, are and shall be his representatives, and consents to be bound by the actions and determinations of the Trustees." The collective bargaining agreement is signed on behalf of Yakima County Beverage Company by Clark.

The Trust is a recipient of payments under Article 12. It is a Taft–Hartley employee benefit trust governed by a board of trustees consisting of an equal number of employer trustees selected by employer representatives and union trustees selected by representatives of the Teamsters. The Board of Trustees is governed by the Washington Teamsters Welfare Agreement and Declaration of Trust. The administrator of the Trust is Northwest Administrators, Inc. (the Administrator).

Ever since its incorporation the Company has paid contributions to the Trust on behalf of Clark. Clark is also a member of Local 524. Prior to 1988 and the controversy that led to this lawsuit Clark and his family did receive some benefits from the Trust. Since 1980 Clark also carried health insurance from Yakima County Blue Shield.

In 1988, as a result of a random audit conducted by the Administrator, the Administrator questioned Clark's eligibility for benefits under the Trust. To quote Clark's brief

on appeal, "The apparent reason for the determination that Cedric Clark was ineligible for Trust benefits was the belief that the labor agreement required that, to be eligible for Trust benefits, a bargaining unit employee must be compensated for 80 hours of bargaining unit work each month. This was the interpretation given the labor agreement by Northwest Administrators, Inc."

Clark appealed the Administrator's determination of eligibility to the board of trustees of the Trust. The Administrator agreed that Clark performed some bargaining unit work but observed that "a majority of Mr. Clark's time was not spent performing bargaining unit work." The Administrator also observed that the Company did contribute for Clark to the Trust, but did not make contributions for Clark to the Pension Trust.

The Appeals Committee of the Trust (the Committee) met and reviewed Clark's appeal and determined that Clark was not eligible for benefits under the Trust. The Committee recognized that Clark did bargaining unit work but also concluded that a majority of his work was non-bargaining unit work. Clark was so notified. He was also notified of his right to appear before the Committee.

Clark did appear before the Committee and offered his oral testimony, supported by the testimony of the general manager of the Company. The Committee also considered affidavits and other documents submitted by Clark as well as documents and records in the administrative file. After review of all the evidence the Committee "specifically determined that Mr. Clark was the owner of Yakima County Beverage and did not perform sufficient bargaining unit work (as defined in the governing labor agreement), to be eligible to participate under the Trust's rules."

## PROCEEDINGS

Clark thereupon brought this suit in the Superior Court of the County of Yakima. The Trust removed to the federal district court because the complaint stated a claim arising under the laws of the United States. 28 U.S.C. § 1441. Both parties moved for summary judgment. The district court gave summary judgment for Clark. The court found that Clark did bargaining unit work and that he was therefore within the provisions of the Trust. The court found totally unambiguous the provision of Article 12 directing the employer to pay the Trust on a monthly basis "on account of each member of the bargaining unit who was compensated for eighty (80) hours or more in the preceding month." The court held the determination of ineligibility made by the Trustees to be arbitrary and capricious.

The Trust appealed.

## ANALYSIS

It is conceded by Clark, according to his brief on this appeal, that the "focus of the inquiry is the June 8, 1989 appeal before the Trust Appeals Committee." It is further conceded by Clark that this Committee did not deny that Clark did bargaining unit work and that the basis of its·decision was that he had not done sufficient bargaining unit work as defined in the collective bargaining agreement to make him a covered employee, a conclusion, as Clark puts it, "obviously based on the additional requirement … that a bargaining unit employee must perform 80 hours of bargaining unit work per month to be eligible."

██ Under the provisions of the Trust, Article 9 § 4, "Trustees' Discretion," it is provided: "Any questions arising in connection with the performance of the provisions of this Trust Agreement not hereto specifically provided for shall be left to the sole discretion of the Trustees." Language in the Trust Agreement which is capable of more than one interpretation does pose a question arising in connection with the performance of the provisions of the Trust, and questions of the interpretation of such language are not specifically provided for. Such questions, therefore, are left "to the sole discretion of the Trustees." Under solidly established precedent, a matter left to the discretion of the trustees and decided by them cannot be decided differently by a court unless the decision of the trustees is arbitrary and capricious. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956,

**1432**

103 L.Ed.2d 80 (1989); *Eley v. Boeing Co.,* 945 F.2d 276, 278 (9th Cir.1991).

The language of Article 12 was open to the interpretation reached by Clark, viz., that any 80 hours of work by a member of the bargaining unit counted in determining eligibility for benefits under the Trust. The language was also open to the interpretation that it was only hours compensated for bargaining unit work that counted in determining eligibility under the 80–hour requirement. Each interpretation has its drawbacks; each has its merits. On the interpretation reached by Clark, work done by a member of the bargaining unit outside the unit's work might be treated as relevant compensation. On the interpretation reached by the trustees, a member of the bargaining unit might lose his health benefits for a month if he were employed on the Company's business for the past month in, say, 79 hours of non-bargaining unit work. This danger, however, seems fanciful in the case of Clark himself who was the Company's president.

Clark relies upon a single sentence in *Blau v. Del Monte Corp.,* 748 F.2d 1348 (9th Cir. 1984), viz. that "[w]ith employee welfare benefit plans ... imposition of a standard that is not contained in the terms of a plan amounts to an arbitrary and capricious decision." *Id.* at 1354. The sentence is taken out of the context of the case. The plan's administrator in *Blau* had "made no attempt to comply with any of the duties that ERISA places upon a benefit plan administrator." *Id.* at 1352. The administrator had added terms virtually *ad libitum* to the plan's provisions, *id.* at 1354, and had kept both the policy of the administrator and the intention of the administrator secret. *Id.* at 1355. Unlike the present case, there was no exercise of discretion on a close and arguable question, but flagrant disregard of the clear terms of the plan.

■ The touchstone of "arbitrary and capricious" conduct is unreasonableness. "[O]ur inquiry is not into whose interpretation of plan documents is most persuasive, but whether the plan administrator's interpretation is unreasonable." *MacDonald v. Pan American World Airways, Inc.,* 859 F.2d 742, 744 (9th Cir.1988). In most contracts and in many trusts, moreover, it is necessary to find conditions that are implicit in the parties' understanding. *See* 3A Arthur L. Corbin, *Corbin on Contracts,* § 653, at 132–34 (1960); 3 Austin W. Scott & William F. Fratcher, *The Law of Trusts* § 186, at 8–9 (4th ed. 1988). Though it is a close question, Clark does not show that the trustees were unreasonable to read the compensation to which Article 12 referred as compensation for bargaining unit work.

Clark makes the point that the Trust Agreement could have spelled out this condition explicitly. Undoubtedly. But that a condition is implied by those interpreting an agreement is not to say that the implication is pulled out of the air. Here the condition is an implication consistent with the total document.

The trustees have a bias toward neither the employer nor the employees. They are held to the strict fiduciary standards set out in § 404(a)(1) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1104(a)(1) (1988). They must act for the exclusive purposes of providing benefits to the participants and their beneficiaries and defraying the reasonable expenses of administration within the Trust. They must act with the care, skill, prudence, and diligence that a prudent man familiar with such matters would show. That the trustees of the Trust acted in good faith is not denied by Clark. Their reasonable exercise of their discretion cannot be second-guessed by a court. We cannot as federal judges be the monitors of every administrative act or every arguable interpretation of an ERISA trust; we cannot substitute our discretion for the faithful exercise of discretion by those entrusted with those tasks.

**REVERSED and REMANDED** with direction to enter judgment for the Trust.

BOOCHEVER, Circuit Judge, dissenting:

I am unable to agree that Article 12 of the collective bargaining agreement reasonably can be construed as requiring 80 hours of compensation for bargaining unit work as opposed to requiring 80 hours of compensa-

tion only. In my opinion, the Trustees' decision should be upheld only if it was based on Clark's failure to perform more than de minimis bargaining unit work.

Article 1 of the agreement between the company and Local 524 makes the union the sole and exclusive bargaining representative for all employees except "supervisors" and "owners" who are not engaged in bargaining unit work. Thus a first question before the Trustees was whether Clark was engaged in any bargaining unit work during the requisite period.

The Trustees found that Clark did at least some bargaining unit work. In an affidavit submitted to the district court, the area manager for the Trust administrator stated that the affidavits that were before the Trustees "do not show that Clark was doing more than diminimus [sic] bargaining unit work during that period." The Trustees' opinion of June 8, 1989, stated only that Clark "did not perform sufficient bargaining unit work (as defined in the governing labor agreement), to be eligible to participate under the Trust's rules."

Article 12, section 12.1 of the collective bargaining agreement specifies, "The Employer shall pay each month into the following employee health care benefit plans, on account of each member of the bargaining unit who was compensated for eighty (80) hours or more in the preceding month." The provision does not specify that the compensation for 80 hours must be for bargaining unit work, and if so construed it could have very adverse results on union members who, from time to time, may be required to do some non-union work during the month. It seems to me that section 12.1 is perfectly clear and if it were intended to require compensation for 80 hours of union work, it would have so specified. The requirement of compensation for 80 hours of bargaining unit work is not contained anywhere in the agreement.

We uphold the eligibility decisions of the trustees of an employee benefit plan "unless they are arbitrary, capricious, made in bad faith, not supported by substantial evidence, or erroneous on a question of law." *Malhiot v. Southern California Retail Clerks Union*, 735 F.2d 1133, 1135 (9th Cir.1984), *cert. de-*

*nied,* 469 U.S. 1189, 105 S.Ct. 959, 83 L.Ed.2d 965 (1985). We have held that "imposition of a standard that is not contained in the terms of a[n employee welfare benefit] plan amounts to an arbitrary and capricious decision." *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1354 (9th Cir.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985). Because section 12.1 is clear and unambiguous, if the Trustees' decision rewrote that provision to require 80 hours bargaining unit work, I would affirm the district court's reversal of their decision as arbitrary and capricious.

In the context of that section, the Trustees' final decision on appeal is unclear. The statement that Clark "did not perform *sufficient* bargaining unit work (as defined in the governing labor agreement), to be eligible to participate under the Trust's rules" (emphasis added) could refer to his failure to perform 80 hours of bargaining unit compensation, or it could refer to the contention that Clark performed only de minimis bargaining unit work. In the latter case, I believe it would be within the discretion of the Trustees to conclude that Clark's minimal bargaining unit work was not sufficient to make him eligible to participate.

Accordingly, I would remand to the district court with instructions to remand to the Trustees for clarification of their decision.