**Ralph BARNETT, Plaintiff–Appellant,**

**v.**

**KAISER FOUNDATION HEALTH PLAN, INC., Defendant–Appellee.**

**No. 93–15390.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 16, 1994.

Decided Aug. 4, 1994.

Mark H. Rosenthal, San Francisco, CA, for plaintiff-appellant.

Kennedy P. Richardson and Sam Walker, Oakland, CA, for defendant-appellee.

Before: HUG, SCHROEDER, and FERNANDEZ, Circuit Judges.

HUG, Circuit Judge:

Ralph Barnett belonged to Kaiser Foundation Health Plan, Inc. ("Kaiser"), a Health Maintenance Organization ("HMO"). After consulting with various doctors about his deteriorating health condition, Barnett formally requested financial approval from Kaiser for a liver transplant. Kaiser denied Barnett coverage. Following an expedited trial, the district court denied Barnett's request for a permanent injunction requiring Kaiser to pay for the costs of his liver transplant. Barnett appeals that decision. We have jurisdiction under 28 U.S.C. § 1292, and we affirm.

## I.

### FACTS AND PRIOR PROCEEDINGS

Ralph Barnett is inflicted with Hepatitis B, further classified as e-antigen positive. The "e-antigen positive" characterization indicates that he is infected with a large amount of the virus and that the virus is replicating rapidly outside the liver. E-antigen positive status carries with it a greater risk that a new liver could become infected with the virus.

Barnett, through his employment with Magnolia Upholstery, entered into an ERISA-regulated service agreement with Kaiser in 1990. Kaiser contracts with The Permanente Medical Group ("Medical Group") to provide health services to its members. Kaiser's Health Plan provides coverage for organ transplants if the Medical Group determines that the Member satisfies medical criteria developed by the Medical Group. In addition, the plan excludes procedures that are experimental or investigational in nature, that is, services that are not

recognized in accord with generally accepted medical standards as safe and effective.

When Barnett's health began to deteriorate, he sought treatment from Dr. Mary Pauly at Kaiser–Sacramento Medical Center. After investigating the option of a liver transplant, Dr. Pauly concluded in early 1992 that a liver transplant was not medically appropriate for Barnett because of his e-antigen positive status. In reaching that decision, Dr. Pauly consulted informally with Medical Group's Liver Transplant Advisory Board ("Advisory Board"), a committee of liver specialists.

After rejection by Kaiser, Barnett sought a second opinion. He was thereafter accepted into the University of California at Los Angeles' and California Pacific's transplant programs. Both medical centers, however, required that Barnett gain certification from his insurance provider, or that Barnett pay $100,000 up front. Thus, Barnett formally requested the Advisory Board to approve his transplant. On October 29, 1992, Dr. Jack Rozance, the Assistant Physician–In–Chief at Kaiser–Sacramento Medical Center, wrote to Barnett informing him that Kaiser would not pay for the transplant because it viewed the procedure as "investigational in nature" and thus excluded from coverage.

Barnett's brother appealed the decision to the Member Grievance Committee on November 10, 1992, who forwarded the appeal to Dr. Leon Kaufman, Chairman of the Advisory Board. On December 4, 1992, Dr. Kaufman recommended affirming the denial of benefits. The Grievance Committee wrote to Barnett on December 15, 1992, stating two reasons for the denial: First, the transplant was excluded under the experimental and investigational procedure exception to the service agreement; and second, the transplant was not medically appropriate because of Barnett's medical condition and history.

Barnett filed this action on December 18, 1992. On December 22, the parties argued Barnett's motion for a preliminary injunction. The court denied the motion, but set the case for a hearing on a permanent injunction. The court held an expedited trial on January 22, 1993. On February 4, 1993, the court issued a written judgment denying the in-junction and entering judgment in favor of Kaiser. Barnett thereafter did obtain a liver transplant from California Pacific through individual financial arrangements. The import of this case, at this stage, is whether Kaiser bears the financial responsibility for the expense of the procedure.

## II.

### STANDARD OF REVIEW

■ Kaiser's service agreement is governed by ERISA, 29 U.S.C. § 1001 *et seq.* Although the language of ERISA does not identify the proper standard of review for benefit denials, the Supreme Court has held that "a denial of benefits … is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). Therefore, the standard by which we review benefit determinations depends upon the amount of discretion the plan vests in its administrator. *Bogue v. Ampex Corp.,* 976 F.2d 1319, 1324 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993).

■ Kaiser's plan explicitly vested Kaiser with discretionary power to determine eligibility for benefits and to construe terms of the agreement. Thus, we review Kaiser's denial of benefits under an abuse of discretion standard. *See Firestone,* 489 U.S. at 115, 109 S.Ct. at 956; *Eley v. Boeing Co.,* 945 F.2d 276, 278–79 (9th Cir.1991). When such discretion exists, the arbitrary and capricious standard applies. *Dytrt v. Mountain State Tel. & Tel. Co.,* 921 F.2d 889, 894 (9th Cir. 1990).

■ Before arguing that Kaiser abused its discretion, Barnett contends that the district court erred in applying a highly deferential standard of review to Kaiser's decision because Kaiser is operating under a conflict of interest. *See Firestone,* 489 U.S. at 115, 109 S.Ct. at 956; *Bogue,* 976 F.2d at 1325. Barnett asks this court to apply a more stringent abuse of discretion standard. Although we

have applied a less deferential standard when an administrator's decision involved a "serious conflict," *see Bogue,* 976 F.2d at 1325, this is not such a case. The district court found that Kaiser was not operating under a conflict of interest, based in part on Kaiser's nonprofit status and in part on the fact that the ultimate decision was made by the Advisory Board of doctors of the Medical Group that the procedure was not medically appropriate for Barnett, rather than a cost savings to the Kaiser Plan. We hold that this decision was not erroneous. The district court applied the proper standard of review.

## III.

### DISCUSSION

We turn to the application of the principles of abuse of discretion review to analyze Kaiser's denial of Barnett's claim for coverage of his liver transplant. Under an abuse of discretion standard, we will uphold the district court's decision unless Kaiser's conduct was arbitrary and capricious. *Clark v. Washington Teamsters Welfare Trust,* 8 F.3d 1429, 1431 (9th Cir.1993). "The touchstone of 'arbitrary and capricious' conduct is unreasonableness. '[O]ur inquiry is not into whose interpretation of plan documents is most persuasive, but whether the plan administrator's interpretation is unreasonable.'" *Id.* at 1432 (citation omitted).

■ Barnett makes two arguments on appeal. First, he contends that the district court erred in finding that Kaiser properly excluded him from coverage under the experimental and investigational procedures exclusion. Second, Barnett contends that Kaiser improperly denied him coverage based on its claim that Barnett did not satisfy the established medical criteria. Barnett further contends that, in denying him coverage, Kaiser improperly considered liver allocation and the liver shortage. We do not reach the experimental and investigational exclusion issue because we conclude that Barnett did not satisfy the medical criteria as required for basic coverage under Section J of the "S" Benefit Schedule of Kaiser's Health Plan. An exclusion would become applicable only if we determined that Barnett was otherwise

entitled to coverage under the plan. We conclude that the district court did not err in finding that Kaiser was not obligated to finance the procedure because Barnett's medical circumstances did not qualify for coverage under the terms of the plan.

Under the agreement's "S" Coverage Benefit Schedule, which covers organ transplants, the Health Plan states that "[s]ubject to the terms and conditions of this Section, Medical and Hospital Services for covered organ transplants are provided in accord with this Benefit Schedule." The Benefit Schedule then sets forth the applicable terms and conditions. The relevant term and condition applicable to Barnett's case in Section J states that Barnett is entitled to benefit coverage if "Medical Group determines that the Member satisfies medical criteria developed by Medical Group for receiving the services."

In its final denial letter to Barnett dated December 15, 1992, Kaiser stated that it was not obligated to pay for Barnett's liver transplant for two reasons. First, it found that the procedure was excluded under the plan's experimental and investigational exclusion. Second, it found that it was not obligated to pay for the procedure because the procedure was not "medically appropriate" in Barnett's case due to facts concerning his medical condition and history. The letter then stated that the findings of the Advisory Board were summarized in Dr. Kaufman's December 4, 1992 letter.

Dr. Kaufman's December 4 letter stated that the Advisory Board denied Barnett coverage due to the poor chance of survival for e-antigen positive patients. Dr. Kaufman also concluded that the treatment with Hepatitis B Immune Globulin ("HBIG") in e-antigen positive patients was investigational in nature. In deposition and trial testimony, Dr. Kaufman further testified that the Advisory Board had adopted a list of contraindications, that is, disqualifying factors, prior to its denial of coverage for Barnett. E-antigen positive status was listed as an absolute contraindication.

The district court found that the Advisory Board had adopted a written set of criteria

from the University of California at San Francisco ("UCSF") in early 1992, which included e-antigen positive as an absolute contraindication. Although the record does not establish a formal adoption of the criteria in the minutes of the Advisory Board meetings, Dr. Kaufman clearly testified both in deposition and at trial that the Advisory Board adopted the criteria and that each member of the Board had a written copy of the criteria. He stated that due to the ever-changing nature of the medical profession, it was necessary that the Advisory Board be able to change the list of criteria based on the changing literature and views of the profession. Two events brought about the then-current list of contraindications. First, in April 1991, the University of Pittsburgh, considered by many to be the leading liver transplant center, published the results of its liver transplant study, in which it documented the high rate of e-antigen positive patients who suffered reinfection of their new graft livers and the accompanying low survival rate. The University decided to stop transplanting e-antigen positive patients because of the high certainty of reinfection. Second, members of the Advisory Board attended a seminar at UCSF in February 1992, where a list of contraindications was promulgated, listing e-antigen positive status as an absolute contraindication. UCSF does not perform the procedure on e-antigen positive patients. Thereafter, the Advisory Board adopted the UCSF list as their own.

We conclude that the district court's decision was not erroneous. Having concluded that Kaiser had in existence established medical criteria excluding Barnett from coverage in effect at the time it denied the coverage, we conclude that Kaiser and the district court properly found that Barnett did not satisfy the medical criteria because of his e-antigen positive status.

Barnett argues that it was improper for the Advisory Board to rely, in part, on the increasing liver shortage in making its determination that Barnett should be denied liver transplant coverage. Dr. Kaufman testified both in deposition and at trial that the Advisory Board did so rely. The district court concluded that it was not an abuse of discre-

tion for the doctors to consider the current liver shortage in formulating their decision to deny Barnett coverage.

We conclude that the Advisory Board based its decision on its own medical judgment, though it evaluated the shortage of livers along with the reduced survival rate of e-antigen positive patients. The doctors, as part of their professional responsibility, were legitimately concerned with distribution of livers to patients with the best chances of survival. Poor survival rate is an acceptable medical criterion, and Barnett's e-antigen positive status reduces his potential survival rate and is thus relevant to the liver shortage because doctors are justifiably concerned with allocation to patients with increased chances of survival. It was not arbitrary or capricious to factor the liver shortage into the doctors' decision.

Additionally, there is no evidence that the Advisory Board's decision was anything other than a medical judgment call. The Advisory Board is an independent group of doctors evaluating the patient from a medical standpoint. There is no evidence the decision was motivated by financial concerns for cost savings to the Kaiser Health Plan. In fact, according to Dr. Kaufman's testimony, the Advisory Board approved approximately 120 of nearly 250 patients evaluated for liver transplants. Of those denied, a great many were the result of a request made too early because a transplant may not even have been needed. Furthermore, the mere fact that California Pacific accepted Barnett into its protocol transplantation program and provided Barnett with a liver transplant should not negate the Advisory Board's medical decision that Barnett did not satisfy it's medical criteria. One hospital's decision to accept a patient for a procedure should not mandate overriding the medical criteria of the Kaiser Health Plan.

**AFFIRMED.**