Alex **ROCA, Dennis Farrell, Robert Corbett and Peter Furtado, as Trustees and Fiduciaries of the Teamsters Local 814 Pension, Annuity and Welfare Funds,** Plaintiffs,

v.

**WESTBURY TRANSPORT INC., Defendant.**

**Civil Action No. CV–96–3269 (DGT).**

United States District Court, E.D.New York.

Sept. 8, 1998.

 

Jennifer D. Weekly, Friedman & Levine, New York City, for Plaintiffs.

Hayes C. Stover, Kirkpatrick & Lockhart LLP, Pittsburgh, PA, for Defendant.

*MEMORANDUM AND ORDER*

TRAGER, District Judge.

This case arises from a dispute between the trustees and fiduciaries of the Teamsters Local 814 Pension, Welfare, and Annuity Trust Funds (the "Fund") and one of their contributing employers, Westbury Transport, Inc. ("Westbury"), a trucking service for retail merchants, over whether contributions must be paid by Westbury for a particular employee under circumstances described below.

## Background

The Fund was created by two separate Agreements and Declarations of Trust ("Trust Agreements")—one for a pension and welfare fund and a second for an annuity fund—between a multi-employer association of movers to which Westbury belongs and the Teamsters Local 814, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. Additionally, Westbury has been a party to a series of collective bargaining agreements ("CBA's") with the Teamsters Local 814. The Twenty–Seventh ("Welfare Plan") Article and the Twenty–Eighth ("Annuity Plan") Article of the latest collective bargaining agreement obligate Westbury to contribute to Local 814's Welfare and Annuity Funds certain sums for "each seniority employee." The term is not explicitly defined in the collective bargaining agreement, but in their papers, the parties have equated the term with employees on the "seniority list" as spelled out in the Eleventh Article entitled, "Seniority:"

> An employee employed forty-five (45) consecutive working days shall be entitled to a position on the seniority list by classification.

Following an audit of Westbury in 1995, the Fund's accountants notified Westbury that it was delinquent in making contributions to the Fund. Westbury disputed the claims and specifically contended that under the provisions of the CBA, James Dawson, one of Westbury's employees, should not be on its seniority list.

Mr. Dawson was formerly an employee on Westbury's seniority list, but he resigned in April, 1993, thereby losing his seniority status. In July, 1993, however, Dawson was rehired. To regain his seniority, Dawson had to again work forty-five consecutive working days, which he did between mid-October and late December. There is, however, a provision within the Eleventh Article of the collective bargaining agreement indicating that "[t]he Employer may employ seasonal employees between September 1st and December 31st, of any year, as needed." Westbury contends that, by working the re-

quired forty-five days during this seasonal period, Dawson was merely a "seasonal employee" and never attained seniority.

On the other hand, the Fund maintains that because Dawson worked part-time during other parts of the year, he is not a seasonal employee. The Fund contends that in the case of an employee, like Dawson, who works periodically throughout the year, the forty-five consecutive days worked should count toward seniority, even if a portion or all of the forty-five days occurred during the September–December period. Following the Fund's view of who is entitled to be on the seniority list, it asserts that Westbury has failed to pay contributions for 696 hours worked by Dawson and asks for $2,147.40 in principal, plus interest and liquidated damages.

Each of the parties argues that its own interpretation of the agreements is the only reasonable one and that there is, therefore, no issue of material fact left to be determined. Accordingly, both have moved for summary judgment and oppose the other party's motion.

### Discussion

#### (1)

■ There is a preliminary issue that must first be resolved. It concerns the standard of review that should apply in evaluating the Fund's interpretation of the collective bargaining agreement. The Fund argues that its reading of Westbury's obligations to the welfare fund under the collective bargaining agreement should be rejected only if it was "arbitrary and capricious." If its interpretation of the bargaining agreement survives that test, the Fund asserts that it is entitled to summary judgment. Although Westbury contends that even under the arbitrary and capricious standard, it should prevail, its argument is that on a number of occasions the Fund did not consistently apply the interpretation it made with respect to Dawson. But this argument is not convincing. While prior practice is certainly relevant, if it involves only a few employees—as it apparently did—it is unlikely to establish a deliberate practice that would be evidence of how the CBA should be interpreted. It

might well be, therefore, that Westbury owes additional contributions.

Westbury contends that the Fund's interpretation should not receive the insulation from a rigorous judicial review that the arbitrary and capricious standard provides. Instead, Westbury suggests that normal contract interpretation principles should be applied, and, accordingly, the Fund's interpretation of the collective bargaining agreement should be reviewed de novo.

Because the court agrees with Westbury's position, the question of whether there is any material issue of fact becomes a more difficult one. While both parties suggest that the contract perfectly clearly says what they say it says, evaluation of the Eleventh Article reveals that it contains ambiguities that create an issue of material fact, precluding summary judgment to either party.

#### (2)

■ The Fund bases the bulk of its case for summary judgment on the contention that its interpretation of the collective bargaining agreement should be reviewed using the "arbitrary and capricious" standard. In explaining why its reading of the "seasonal employees" and "forty-five consecutive working days" provisions should hold, the Fund quotes a passage contained in both Trust Agreements granting power to its trustees "to construe the provisions of this Agreement . . . and the terms used herein." Pension and Welfare Trust Fund Agreement, Art. V, Sect. 3, Annuity Trust Fund Agreement, Art. IV, Sect. 2. The Fund also refers to a passage in the "Welfare and Annuity Administration" Article of the CBA in which Westbury "agrees to be bound by the rules and regulations as the Board of Trustees [of the Fund] shall, from time to time, adopt, promulgate or amend." 29th Art. The Fund contends that, according to caselaw, the discretion granted to its trustees in these passages should be subject only to "arbitrary and capricious" review and thus the Fund's interpretation of Westbury's responsibilities under the CBA is entitled to deference. The Fund's argument has, however, two critical flaws—the first pertains to the Fund's reading of both the collective bargaining agree-

ment and the Trust Agreements, and the second relates to its reading of the caselaw.

■ The two provisions of the Trust Agreements and one from the CBA upon which the Fund relies, state as follows:

> The Trustees shall have the power *to construe the provisions of such pension plan and the terms used therein,* and any construction adopted by the Trustees in good faith shall be binding upon the Union, the Employers, the employees and the Plan's beneficiaries. The Trustees shall be the sole judges of the standard of proof required in any pension matter and the application and interpretation of such Plan and the decisions of the Trustees made in good faith shall be final and binding on the Union, the Employers, the employees and the plan's beneficiaries.

Pension and Welfare Trust Fund Agreement, Art. II, Sect. 4, as amended (emphasis added).

> The Trustees shall have the power to construe the provisions of this Agreement and Declaration of Trust and the terms used herein and any construction adopted by or any decision made by the Trustees in good faith shall be binding upon the Union, the Employers, the employees and the Plan's beneficiaries.

Pension and Welfare Trust Fund Agreement, Art. V, Sect. 3, as amended.

> [T]he Employer hereby designates the present Employer Trustees of such Funds and their successors as the representatives of the Employer signatory hereto and agrees to be bound by the rules and regulations as the Board of Trustees shall, from time to time, adopt, promulgate or amend.

Collective Bargaining Agreement, Twenty-Ninth Article ("Welfare and Annuity Administration").

The first point to be noted is that none of the three quoted provisions nor any other provisions in the CBA or the Trust Agreements grant the trustees any authority to interpret the CBA. Amended Article II, Section 4 refers to the *pension plan* and Article V, Section 3 refers to *"this* Agreement and Declaration of Trust." (emphasis added). Moreover, no reference within the Trust Agreements to the CBA explicitly or implicitly grants authority to the Fund to interpret the CBA.

The Twenty–Ninth Article of the CBA, which is entitled "Welfare and Annuity Administration," cannot be read to allow the Fund's trustees to define the employer's obligations which are spelled out to the penny in the Twenty–Seventh and Twenty–Eighth Articles. The reference to "rules and regulations" in the Twenty–Ninth Article is fairly interpreted to authorize the trustees to deal with those matters for which the trustees are charged with responsibility by the Trust Agreements, such as administering the trusts, establishing procedures for auditing an employer, calculating interest and liquidated damages when an employer has been delinquent in payments, and, most importantly, determining employee eligibility for benefits paid out of the trust. And on all of these subjects, the Fund's decisions are properly subject only to an "arbitrary and capricious" review. *See Dumac Forestry Servs., Inc. v. IBEW,* 814 F.2d 79, 82 (2d Cir.1987)("As a general rule federal courts should refrain from interfering with the administration of a pension plan unless its trustee or administrator has acted in an arbitrary or capricious manner." (quoting *Building Trades Employers Ass'n v. New York State Teamsters Conference Pension & Retirement Fund,* 761 F.2d 115, 117 (2d Cir.1985))); *Gordon v. ILWU–PMA Benefit Funds,* 616 F.2d 433 (9th Cir.1980)(applying the arbitrary and capricious standard of review to claims under the Labor–Management Relations Act and Employee Retirement Income Security Plan); *Roark v. Lewis,* 401 F.2d 425 (D.C.Cir.1968)(Labor–Management Relations Act).

On the other hand, an employer's obligation to contribute to the Fund derives from a wholly separate document whose provisions are contained in the CBA, not in the Trust Agreements. Indeed, nowhere in their provisions do the Trust Agreements address Westbury's obligation to contribute to the Fund. The obligations of the employer to contribute to the Fund are, therefore, the result of a bargaining and negotiations process between the employer group and the

union, to which the Fund was not a party. Of course, the CBA could have granted the Fund discretion to resolve all disputes as to the content of contract clauses, including those containing employer contribution obligations, but it did not do so. Similarly, the Trust Agreements lack such a provision.

In sum, though the Fund is correct in arguing that its interpretation of the Trust Agreements deserves to be reviewed under the arbitrary and capricious standard, the dispute here involves an interpretation of the CBA which does not contain a provision granting the Fund discretion to interpret its terms, and is, therefore, subject to a de novo review. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

The second flaw in the Fund's argument relates to its reading of the relevant caselaw. The Fund asserts that the courts have held that "arbitrary and capricious" review extends beyond the realm of the trust agreement itself to any area that the trustees might touch while carrying out their duties. However, the cases cited by the Fund, including *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Murphy v. IBM Corp.*, 23 F.3d 719 (2d Cir.1994); *Heidgerd v. Olin Corp.*, 906 F.2d 903 (2d Cir.1990); *DeCarlo v. Rochester Carpenters Pension, Annuity, Welfare and S.U.B. Funds*, 823 F.Supp. 115 (W.D.N.Y.1993); and *Clark v. Washington Teamsters Welfare Trust*, 8 F.3d 1429 (9th Cir.1993), are readily distinguishable. Each involves a dispute between an employee seeking benefits and a trust fund that declines to pay. None of the cases involves a dispute between the employer and the fund over the former's obligations. Thus, each of these cases involves issues of interpretation of a trust agreement and not the CBA. This difference is significant, both formally and from a policy perspective.

Both Westbury and the Fund devote substantial space in their arguments to *Clark*, largely because the trustees looked to the CBA in determining whether the plaintiff should be awarded benefits. In its brief, the plaintiffs here highlight the *Clark* court's conclusion that the Washington Teamsters trustees' interpretation of the CBA could not be disturbed because it was not arbitrary or capricious. While the *Clark* holding would appear to suggest that a trust fund has the discretion to interpret a CBA, closer inspection reveals that *Clark*, too, is not supportive of plaintiffs' argument. The trustees in *Clark* were not seeking to obtain additional contributions from the employer or to bind the employer to their interpretation of the CBA. The trust fund in *Clark* was interpreting the CBA, but only for the purpose of determining whether plaintiff should receive benefits under the trust agreement. In our case, the Fund is not attempting to determine Dawson's benefits, but is seeking the power to interpret the terms of the CBA, to which it was not a party, and which nowhere gives it such authority, in order to impose a financial liability upon Westbury. In essence, the Fund trustees are seeking to force Westbury to contribute more monies than it might have originally agreed to when its representative negotiated the CBA, though the CBA, unlike the Trust Agreements, does not give it the discretion to do so.

The Second Circuit has already implicitly determined that in a dispute between an employer and an employee benefits fund, a de novo review of the extent and nature of the employer's obligations is in order. *See DeVito*, 38 F.3d 651. The facts of *DeVito* are almost identical to those before us. *DeVito* was a dispute between an employer and an employee benefits fund about whose interpretation of the CBA (between the employer and the Local 1245) determined the employer's fund contribution obligations. The Court of Appeals found that the intentions of the parties to the CBA's were "at least ambiguous" regarding the crucial provisions, and held that, "[t]o the extent that this ambiguity exists, a textual analysis of the Agreement may be supplemented by an exploration of extrinsic evidence concerning the parties' intent." *DeVito*, 38 F.3d at 654. If the *DeVito* court had intended to apply an arbitrary and capricious standard to the benefits fund's interpretation of the employer's obligations to the fund under the CBA, then it would have upheld the fund's interpretation even given the agreement's ambiguous provi-

sion and the plausible opposing interpretation offered by the employer. Though the *DeVito* opinion does not say so explicitly, as the issue was not specifically presented, it is evident that the Second Circuit was applying a de novo review of the fund's construction of the CBA provision.

Moreover, *DeVito* fairly comports with the Supreme Court's decision in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), which holds that there should be a broad presumption in favor of the trustee's authority, but only if there is an explicit provision to that effect. Otherwise, courts are to interpret a trust agreement under a de novo standard. *Firestone*, 489 U.S. at 115, 109 S.Ct. 948 ("we hold that a *denial of benefits* challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed *under a de novo standard* unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan")(emphasis added).

Finally, in the hope of bringing clarity to this ambiguous area of the law, it is necessary to address the one directly contrary case discussed by plaintiffs, *Chicago District Council of Carpenters Pension Fund v. Exhibition Contractors Co.*, 618 F.Supp. 234 (N.D.Ill.1985).[1] *Exhibition Contractors* has facts that are very similar to those here. Three employee fringe benefit trust funds brought suit claiming that the employer, Exhibition Contractors, owed delinquent contributions to the funds. Both parties moved for summary judgment, the issue being the interpretation of the CBA between Exhibition Contractors and the local carpenters' labor union. The agreement divided the work that employees did into two categories, "bargaining unit" work and "nonbargaining unit" work. The fund trustees asserted that Exhibition Contractors had to contribute to the trust funds for all work done, whether it be "bargaining unit" or "nonbargaining unit," while the defendant maintained that it was obligated to contribute only on behalf of "bargaining unit" work. As here, the relevant provision of the CBA was sufficiently ambiguous to be susceptible to contrary reasonable interpretations. The district court, however, applied the arbitrary and capricious standard in reviewing the interpretation of the CBA by the trustees, found their interpretation to be reasonable, and thus granted the trustees summary judgment.

It is submitted that *Exhibition Contractors* erred in applying the arbitrary and capricious standard rather than a de novo review. While the *Exhibition Contractors* opinion does go to great lengths to establish authority for the general principle that the decisions of trustees regarding the management of their funds are subject only to "arbitrary and capricious" review, all but one of the cited cases concern disputes between employees and the pension or benefits funds over entitlement to benefits.[2] And consistent with the Supreme Court's decision in *Firestone*, the fund administrators' decisions are reviewable under the arbitrary and capricious standard. Unlike the situation in the present case, none of the cases cited in *Exhibition Contractors* involved a fund attempting to collect allegedly delinquent contributions from an employer.

---

1. Plaintiffs cite one other case with similar facts and holding, *Chicago District Council of Carpenters Pension Fund v. Hamstra*, 1986 WL 8034, 1986 U.S. Dist. LEXIS 22760 (N.D.Ill. July 17, 1986), but does not discuss it. This case, *Hamstra*, emerged from the same court as *Exhibition Contractors* and cites it as authority, but also does not distinguish between CBA's and trust agreements. Accordingly, this court's reasoning regarding *Exhibition Contractors* applies in a similar manner to *Hamstra*.

2. The one case cited in *Exhibition Contractors*, but not involving an employee suing the trust funds, *Central States, Southeast, and Southwest Areas Pension Fund v. Central Transport, Inc.*, 698 F.2d 802 (6th Cir.1983), involved a dispute over the authority of the fund to audit one of the contributing employers. This dispute, however, concerned an aspect of internal fund management governed by the trust agreement itself and, therefore, is subject only to "arbitrary and capricious" review. Because the funds' authority at issue in *Central States* derived from the trust agreement, it is consistent with this case to say that the interpretation of the relevant provision was properly subject only to "arbitrary and capricious" review. If the relevant provision had been in the CBA, any interpretation by the pension fund would have been reviewable under standard contract interpretation principles.

**50**

Furthermore, the *Exhibition Contractors* opinion fails to address any distinction between trustee interpretations of the trust agreement and trustee interpretations of the CBA. Each case that *Exhibition Contractors* cites with respect to the arbitrary and capricious standard involves a dispute over the trustees' interpretation of the trust agreement, not the CBA. In addition, the opinion repeatedly refers to "bargaining and trust agreements" as a single, unified category of agreement, as if there were no reason to distinguish between the two types. The *Exhibition Contractors* court at no point addresses CBA's as a distinct entity separate from trust agreements, which normally emanate from CBA's. Not surprisingly, the district court did not give any reason for generally employing an arbitrary and capricious standard when reviewing interpretations by fund trustees of collective bargaining agreements.

While it makes much sense for an employer to grant broad authority to fund trustees to resolve disputes between its employees and the fund, it makes little sense for an employer to do the same when it comes to determining the employer's own liabilities to the fund, especially as the fund's decisions are subject to limited judicial review. In brief, it appears that the *Exhibition Contractors* court did not even consider the possibility of distinguishing interpretations of CBA's from those of trust agreements and the sound policy reasons for making such a distinction.

Ironically, the *Exhibition Contractors* court quoted a passage from one of the original decisions articulating the arbitrary and capricious standard that itself illustrates the necessity for a distinction between these two types of agreements. Regarding a dispute between retired coal miners and the trustees of the United Mine Workers of America Welfare and Retirement Fund about the miners' eligibility for benefits, the D.C. Circuit had stated in *Roark v. Lewis*, 401 F.2d 425 (D.C.Cir.1968): "The court is fully cognizant of the internal pressures asserted on the trustees: the size of the pie is fixed and variations can be achieved only by changing the size of the number of the slices .... It is

for the trustees, not judges, to choose between various reasonable alternatives." *Exhibition Contractors*, 618 F.Supp. at 238–39. In making the pie analogy, the *Roark* court recognized that because the trustees cannot increase at will the flow of income into their fund, they should be granted discretion only in determining how to distribute the money that is available. The *Roark* court certainly was not contemplating that the trustees could solve the funds' problem of "internal pressures" by directing the employers to increase the size of the pie. Faced with a defined pie, it is not only appropriate but wise for courts to leave the trustees, who are far more familiar with the resources available to a particular fund, to determine whether to pay benefits, who should receive them, and what amount should be received. Thus, the *Exhibition Contractors* court failed to recognize the connection between the fixed nature of the "size of the pie" and the rationale for the arbitrary and capricious standard.

By saying that trustees have broad discretion to interpret the CBA as well as trust agreements, the *Exhibition* court permitted trustees to increase the size of contribution obligations of employers to levels greater than they or the union, the original parties to the bargaining agreement, had agreed to or contemplated. Only an explicit provision in the CBA should permit such a result. The grant of discretion the Fund here claims extends the arbitrary and capricious standard beyond its original purpose and may unfairly impinge upon the contractual rights of the parties to the CBA, particularly if the employer, Westbury, is obligated to pay more than it agreed.

■ Moreover, the arbitrary and capricious standard, which protects pension funds from depletion by excessive, non-meritorious employee claims for benefits, requires specific authorization in the agreement if it is to be employed by a reviewing court. *See Firestone*, 489 U.S. at 115, 109 S.Ct. 948. It is in the employee benefits context that the arbitrary and capricious standard has been invoked in subsequent caselaw, and it is to that type of internal fund management that the arbitrary and capricious standard should be limited. By extending the standard to situa-

tions in which trustees are interpreting collective bargaining agreements to ascertain the contribution obligations of employers, the *Exhibition Contractors* court read *Firestone* far too broadly and departed from the original rationale for "arbitrary and capricious" review.

### (3)

■ Having concluded that the arbitrary and capricious standard is inapplicable and de novo review is the proper standard, the key question is whether the provision in debate here is ambiguous, that is, susceptible to multiple reasonable interpretations. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)("summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact,'" quoting Rule 56(c)). To quote again from *DeVito,* 38 F.3d at 654, "To the extent that this ambiguity exists, ... summary judgment is inappropriate."

The parties argue in particular about the meaning of the following two sentences from the Eleventh Article of the CBA, entitled "Seniority:"

> An employee employed forty-five (45) consecutive working days shall be entitled to a position on the seniority list by classification.

> \* \* \* \* \* \*

> The Employer may employ seasonal employees between September 1st and December 31st, of any year, as needed.

The Fund contends that these provisions must mean that an employee who works forty-five days during the busy season, September to December, and part time during other parts of the year must attain seniority because he is not merely a "seasonal employee." Westbury argues that the provisions mean that the forty-five days count toward seniority only if they are outside of the busy season. The seasonal employee clause, Westbury says, was added specifically to give the company more flexibility in hiring so that it could afford to take on more employees full time during the busy season.

Both interpretations appear plausible. In addition, both parties provide affidavits from knowledgeable individuals asserting that the CBA was always understood the way their side reads it. The parties, then, have presented real questions of credibility and issues of fact. Westbury claims that it has affidavits from the only individuals who were around at the time of the negotiations in 1977 that originally yielded the last clauses of the Eleventh Article, and so its affidavits should trump the Fund's. It is an interesting claim, but their key affiant, though a former union representative, now works for Westbury. As the CBA does not have a clause prohibiting resort to parol evidence, there must be a trial to determine the meaning of the contested provisions.

### Conclusion

No authority was granted the Fund trustees here to interpret the collective bargaining agreement which spelled out Westbury's Welfare and Annuity benefit fund obligations. Unless there is explicit authority granting pension fund trustees the authority to interpret the extent of the employer's fund obligations under the collective bargaining agreement, a dispute between a union and a fund-contributing employer over the collective bargaining agreement is subject to de novo review by a court employing normal contract interpretation principles. Given that the Fund and Westbury have offered reasonable conflicting interpretations along with supporting affidavits, they have raised genuine issues of material fact to be resolved at trial. Accordingly, both parties' motions for summary judgment are denied.

SO ORDERED.