CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND and Howard McDougall, Trustee, Plaintiffs,

v.

TANK TRANSPORT, INC., a Wisconsin corporation, Defendant.

No. 90 C 5524.

United States District Court, N.D. Illinois, E.D.

Dec. 3, 1991.

Albert M. Madden, Robert Anthony Cocco, Constance M. Borek, William Walter Leathem, Central States Law Dept., Rosemont, Ill., for plaintiffs.

Patrick Joseph Calihan, Calihan & Lavin, Chicago, Ill., Thomas J. Duffey, Joseph P. Duffey, Duffey Law Office, S.C., Milwaukee, Wis., for defendant.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff, Central States, Southeast and Southwest Areas Pension Fund (Central States), brought an action under § 502(e)(1) of ERISA to collect contributions allegedly owed to it by the defendant, Tank Transport, Inc. ("Tank"). Defendant brought a motion to dismiss this action, and the court entered an order dismissing plaintiffs' claim, and compelling arbitration of this matter. Central States filed a timely motion for reconsideration. For the reasons explained below, plaintiffs' motion to reconsider is granted, and defendant's motion to dismiss is denied.

### Background

Central States is a multi-employer pension fund that receives contributions from more than 6000 different employers. Generally, employees negotiate collective bargaining agreements with local unions and as part of these agreements create pension fund contribution requirements for the employers. Tank entered into collective bargaining agreements with the International Brotherhood of Teamsters Local Union 200, which required them to participate in the Central States Multi-employer Trust Fund.

While Tank has paid contributions to Central States since 1971, the most recent agreement between Tank and Local 200 covered the periods of November 15, 1985, through May 14, 1989, and May 15, 1989, through May 14, 1992. Under the terms of this agreement, Tank contributes thirteen dollars per day for each "regular employee" covered by this agreement to the Central States Pension Fund, who is on the payroll thirty days or more. (See Article 30 of the Collective Bargaining Agreement).

During a 1990 audit of Tank's records, Central States determined that Tank owed certain sums as contributions on behalf of a certain group of employees covered under the collateral agreements to the collective bargaining agreements. These collateral agreements established a separate division of employees known as the Special Services Division ("SSD"), on whose behalf pension contributions were made to a Section 401(k) plan, rather than to Central States Pension Fund. The SSD division was established by Tank to make it more competitive with new non-union competition which now controls the marketplace. The wage packages of the "regular division" (those employees covered under the Central States Pension Fund) agreement and the SSD division agreement were similar. However, the SSD division agreement was less costly in terms of vacations, holidays, sick leave, health and welfare and pension. Central States argues that it never approved of, nor was even informed of the existence of the SSD agreements until the audit was conducted. Tank has paid all contributions that it owed to Central States on behalf of the "regular division" employees as required by Article 30 in the collective bargaining agreements, but disputes its obligations to contribute to the fund on behalf of the SSD employees.

After the Audit, Central States brought an action under § 502(e)(1) of ERISA[1] to enforce the collective bargaining agreements requiring contributions to Central States on behalf of all regular employees. Tank then moved to dismiss the action based on Article 30 of the collective bargaining agreements, which provides that "[d]isputes or questions of interpretation

---

**1.** 29 U.S.C.S. § 1132 provides:
1132 Civil Enforcement
"except to actions under (a)(1)(B) of this section, the District Court of the United States shall have exclusive jurisdiction of civil actions under this title brought by the Secretary [of Labor] or by a participant, beneficiary, or fiduciary." 29 U.S.C.S. (e)(1).

concerning the requirement to make contributions on behalf of particular covered employees shall be submitted directly to the grievance procedure, beginning with Step 4." Article 8, Step 4, of the Collective Bargaining Agreement provides for a decision on the dispute to be made by the Wisconsin Joint Petroleum and Cement Grievance Committee.[2] If the grievance committee "deadlocks" either party may request that the grievance be referred to binding arbitration.

In the previous decision, the court granted Tank's motion to dismiss and compel arbitration. Shortly thereafter, the Wisconsin Joint Petroleum and Cement Grievance Committee met, and held that Tank's failure to pay contributions to Central States on behalf of the SSD employees did not violate the collective bargaining agreement or collateral agreement. The Committee having ruled, this dispute is again before the court on a motion for reconsideration.

### Discussion

Central States presents several arguments to support the motion for reconsideration, many of which will not be discussed here. The primary issue in this motion is whether a statutory claim created under § 515 of ERISA may be resolved through an agreement in a collective bargaining agreement to settle contribution disputes through grievance committee decisions, and/or arbitration, or whether statutory claims brought under § 515 of ERISA must proceed directly to a federal district court. If such collective bargaining agreements are allowable, the secondary issue in this case is whether the instruments in the instant case (the trust agreement, the collective bargaining agreement, and the collateral agreement) require Central States

to submit their contribution dispute to this procedure. Since the court finds that submission of a § 515 ERISA statutory right to a grievance committee and/or subsequent arbitration is inappropriate in the instant case, the second issue need not be discussed.

Central States first argues that the court incorrectly determined that there is a presumption in favor of arbitration in this case. Plaintiff contends that the court's reliance on the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), is inappropriate because the type of dispute involved in the instant case concerns "employment contracts" of "workers engaged in foreign or interstate commerce", which are specifically excluded from the FAA. 9 U.S.C. § 1. The court agrees with the plaintiffs' argument.

■ This case involves collective bargaining disputes between a union and an employer. Collective bargaining agreements are contracts of employment within the meaning of the FAA's exclusions. *American Postal Workers Union v. U.S. Postal Service,* 823 F.2d 466 (11th Cir. 1987). Most courts have limited the exclusion to "workers actually engaged in interstate commerce," *see Pietro Scalzitti Construction Co. v. Int'l Union of Operating Engineers,* 351 F.2d 576 (7th Cir.1965), such as bus drivers and truck drivers. Tank Transport is a motor carrier corporation that transports commodities in interstate commerce. Its employees (truck drivers) are members of the International Brotherhood of Teamsters ("IBT"). The court finds that employment contracts involving these types of employees are the types of agreements excluded from the Federal Arbitration Act.

However, this determination alone would not alter the court's previous decision.[3]

---

2. That Committee "shall consist of an equal number of union representatives and employer representatives selected by the respective parties to this agreement and by Local 200 IBT ... a majority vote [by the Committee] shall constitute a final and binding decision."

3. The court notes that while the FAA "establishes a federal policy favoring arbitration", *Shearson–American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987), the fact that the FAA is not immediately applicable to the issues in the instant case does not eliminate arbitration as an acceptable dispute resolution mechanism, nor does it evi-

Central States also argues that there is a presumption against arbitration of ERISA fringe benefit contribution disputes. In making this argument, the plaintiff heavily relies on the Supreme Court's decision in *Schneider Moving Co. v. Robbins*, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984), and the Seventh Circuit's decision in *Local Union 597 v. Mosbeck Indus. Equip., Inc.*, 856 F.2d 837 (7th Cir.1988).

Relying on *Schneider*, plaintiff first contends that the arbitration provision of Article 30 of the collective bargaining agreements does not prevent the pension fund trustees from initiating legal proceedings to collect delinquent contributions in a federal district court, as provided in 29 U.S.C. § 1145 (§ 515 of ERISA). In *Schneider*, the court held that "the presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between the union and employer apply to disputes between trustees and employers." 466 U.S. at 372, 104 S.Ct. at 1849. In the earlier decision, the court noted that this case is distinguishable from *Schneider*. While the collective bargaining agreements in *Schneider* provided for arbitration of disputes between the union and the employer, the arbitration clauses

> contain[ed] no suggestion that either the [employer] or the Union intended to require arbitration of disputes between the trustees and the employers ... it is unreasonable to infer that the parties to these agreements, or to the trust agreements, intended the trustees to rely on the Union to arbitrate their disputes with the employer.

*Schneider*, at 374, 104 S.Ct. at 1850. The *Schneider* court held that the lack of any provisions for trustee-employer arbitration in the collective bargaining agreement was controlling, and in its absence no intent to arbitrate could be inferred.

■ In the instant case, there is express language in the collective bargaining agreements allowing for trustee initiation and involvement in the arbitration process.

(See Article 30 of the Collective Bargaining Agreements). Nonetheless, this fact is not controlling since the Seventh Circuit has found that *Schneider* "does not squarely mean that a collective bargaining agreement can compel arbitration of employee benefit trust fund contribution disputes by inserting plain language of such intention in the agreement." *Local Union 597 v. Mosbeck Indus. Equip., Inc.*, 856 F.2d at 841. The court rejects plaintiff's argument that under *Schneider* there is never a presumption of arbitrability; rather, "*Schneider* stands for the proposition that courts must carefully examine the pertinent trust and collective bargaining agreements to determine whether parties intended to arbitrate disputes between trust funds and employers." *Mosbeck*, 856 F.2d at 840. After careful re-examination of this and other ERISA case law, and in light of the recent grievance panel determination on the instant dispute, the court finds that compulsory arbitration of the statutory ERISA § 515 right is inappropriate in this case.

■ Arbitration should not be ordered where there is "an inherent conflict between arbitration and the statute's underlying purpose." *Shearson*, 482 U.S. 220, 227, 107 S.Ct. 2332, 2337. Under the collective bargaining agreement, Article 30 "disputes or questions of interpretation concerning the requirement to make contributions on behalf of particular covered employees shall be submitted directly to the grievance procedure beginning with Step 4, by either the Employer, the Local Union, or the Trustees." Pl.Ex. A. However, as explained by the plaintiff, in the instant case, arbitration is not the first step in resolving a dispute. Step 4 begins with a grievance panel decision, which determines whether or not the matter will be referred to arbitration. The grievance panel is made up of an equal number of union and employer representatives and arbitration will not begin unless the panel deadlocks on a decision.

As noted in defendant's reply, shortly after Central States filed the motion for

---

dence a presumption of non-arbitrability. A requirement to arbitrate may still be valid re-

gardless of whether or not the FAA is clearly applicable.

reconsideration, the grievance panel met. The Grievance Committee consists of an equal number of union and employer representatives selected by the respective parties to the agreement (Tank and Local 200 IBT), and other employers having Tank truck agreements with Local 200 IBT. The trustees, who are the fiduciaries of the employee pension plans, had no representatives on the grievance panel. The panel's consideration of this issue did not result in a deadlock so the dispute did not go to arbitration. The panel determined that Tank's failure to pay the contributions to Central States did not violate the Collective Bargaining Agreement or the Collateral Agreement.

The court finds that it is doubtful that plaintiffs' interests can be represented, or resolved by the grievance panel;[4] it is also unlikely that this dispute will ever go forward to arbitration.[5] Further, after reconsideration, the court doubts that such resolution would be appropriate.

> The underlying purpose of ERISA is "to protect ... the interests of participants in employee benefit plans and their beneficiaries ... [by] establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for ... ready access to the federal courts.

29 U.S.C.S. § 1001(b) (1990). The court finds the deferral to a grievance panel of a dispute over an employer's requirement to contribute to a pension fund, especially where the trustee of the fund are not represented on the grievance panel, is inconsistent with the underlying purposes of ERISA.

██ Finally, even if it were found that the agreements to submit the pension fund contribution disputes to a grievance committee and/or arbitration were allowable under the provisions of ERISA, Central States should not be bound to those provisions. While Tank argues that Central States accepted contributions pursuant to the collective bargaining agreement, and is therefore bound to it, the court disagrees. Article III, Section 4 of the Trust Agreement between Tank and Central States provides that

> [T]he Board of Trustees shall take such steps, including the institution and prosecution of, and intervention in, any legal proceedings as the Trustee in their discretion deem in the best interest of the Fund to effectuate the collection or preservation of contributions or other amounts which may be owed to the Fund.

The court finds that this provision would appear to be in conflict with a requirement in the collective bargaining agreement that Central States submit their contribution disputes to a grievance committee and possible subsequent arbitration.

As the Fourth Circuit Court noted in *Sinai Hosp. of Baltimore, Inc. v. National Benefit Fund:*

> To say ... that by accepting or collecting such contributions the trustees are bound by all terms of the collective bargaining agreement would be to completely dissipate the law of trusts, leaving employee benefit funds vulnerable to the recurring whims of employer/union bargainers. One of the principal purposes of ... ERISA was to avoid such an effect.

697 F.2d 562, 568 (citing *NLRB v. Amax*, 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672

---

**4.** As stated by Tank, non-union employers now control the marketplace in this area. Tank established the SSD division to allow it to remain competitive with the non-union employers, while still enabling it to hire employees through Local 200 IBT. Part of the Tank–Local 200 IBT agreement establishing the SSD division was the establishment of an alternative, apparently less costly pension fund, the 401(k) plan at issue. It is clear that Central States would have little, if any representation on the grievance panel, and thus, no way to protect their fiduciary interests in the Central States Pension Fund.

**5.** Since Local 200 and Tank were the original parties to the collective bargaining agreements as well as to the collateral agreement, it is not unreasonable for this court to infer that it is unlikely that the panel will ever deadlock on this issue, since its members are representatives from the Union and the Employer who were the original parties to both the collective bargaining agreements and the collateral agreement.

(1981)).[6] The court agrees with this reasoning, and therefore finds that to the extent that the arbitration requirement is applicable, given the facts of this case the trustees should not be bound to an agreement to arbitrate.

For all of the reasons discussed above, the court questions whether the agreement to submit the pension fund contribution disputes to a grievance committee, or arbitration is allowable under the applicable provisions of ERISA. Further, even if the agreements to arbitrate is allowable the court finds that, given the facts of this case, Central States should not be bound to those provisions. The court therefore grants the motion to reconsider, and denies the defendant's motion to dismiss.

### Conclusion

For the foregoing reasons, the court vacates it's previous order granting the defendant's motion to dismiss, and compelling arbitration of this matter. Plaintiff's motion to reconsider is granted, and the defendant's motion to dismiss is denied.

---

**6.** *See also, Sinai Hosp. of Baltimore, Inc. v. National Benefit Fund,* 697 F.2d at 568. "[W]hile the trustees as representatives of the Fund, are indeed third party beneficiaries of the collective bargaining contracts, they [are] not parties to the contract in the sense that they are held to have agreed in absentia to all of the contract's provisions."