WISCONSIN UFCW UNIONS & EM-PLOYERS HEALTH PLAN, Paul Whiteside and William Seehafer, Plaintiffs,

v.

**WOODMAN'S FOOD MARKET, INC., Defendant.**

No. 04 C 0113.

United States District Court, E.D. Wisconsin.

Dec. 2, 2004.

---

Anne Reed, Sarah Huck, Milwaukee, WI, for Plaintiffs.

Steven Zack, Madison, WI, for Defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

Plaintiffs Wisconsin UFCW Unions and Employers Health Plan ("Plan"), a multi-employer health plan governed by a board of trustees equally representing the United Food and Commercial Workers Union and various employers, and two of the Plan's representative trustees bring this action under §§ 1132(a)(3)(B) and 1145 of

the Employee Retirement Income Security Act of 1974 ("ERISA"), seeking to recover an alleged delinquent withdrawal liability payment from defendant Woodman's Food Market, Inc. ("Woodman's"). Title 29 U.S.C. § 1132(a)(3)(B) authorizes fiduciaries such as the Plan to bring actions to obtain relief for ERISA violations, and § 1145 provides that an employer who in a collective bargaining agreement agrees to contribute to a multi-employer plan but fails to do so violates ERISA. Before me now is plaintiffs' motion for summary judgment.

## I. FACTS

In 2000, the Appleton, Wisconsin local of the United Food and Commercial Workers (the "union") entered into a collective bargaining agreement (the "2000 agreement") with Woodman's. The agreement required Woodman's to make contributions to the Plan in exchange for the Plan providing health benefits to Woodman's employees. The 2000 agreement also provided that Woodman's was bound by the trust agreement that governed the Plan. The trust agreement conferred discretion on the trustees to resolve disputes arising under the Plan subject to judicial review under an arbitrary and capricious standard. The 2000 agreement also provided that if Woodman's terminated its participation in the Plan at a time when the Plan's reserves were less than a specified amount, Woodman's would be subject to withdrawal liability. Although the parties disagree about the date that Woodman's terminated its participation in the Plan, they agree that it did so at a time when the Plan's reserves were less than the specified amount.

The 2000 agreement expired on May 24, 2003, and shortly before it expired, the union and Woodman's negotiated a successor agreement (the "2003 agreement"). The 2003 agreement did not require Woodman's to contribute to the Plan but instead provided that commencing June 1, 2003, Woodman's would provide health benefits to its employees through a self-insured plan. On May 3, 2003, Woodman's made its last payment to the Plan, which payment covered its employees' health benefits through May 31, 2003. Subsequently, the Plan's trustees determined that Woodman's was subject to withdrawal liability in the amount of $49,465. When Woodman's declined to pay, plaintiffs commenced the present action.

Additional facts will be stated in the course of the decision.

## II. APPLICABLE LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material* fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In evaluating a summary judgment motion, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Standard of Review of Trustees' Decision

Neither party addresses the standard of review applicable to the trustees' decision imposing withdrawal liability on Woodman's. In ERISA denial of benefit claims, the standard of review of an administrator's decision is de novo unless

the plan confers discretion on the administrator in which case the decision is reviewed under the arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In ERISA cases involving plans' attempts to collect allegedly delinquent contributions from employers, the appropriate standard of review is determined by analyzing the relevant documents, which, in the present case, are the collective bargaining agreement and the trust agreement governing the Plan. *See Suburban Teamsters of N. Ill. Welfare & Pension Funds v. Moser,* 867 F.Supp. 665, 670 (N.D.Ill.1994) (citing *Ind. State Council of Roofers Health and Welfare Fund v. Adams Roofing Co. of Kokomo, Inc.,* 753 F.2d 561, 564 (7th Cir.1985) and *Central States, Southeast and Southwest Areas Pension Fund v. Hartlage Truck Serv., Inc.,* 991 F.2d 1357, 1360 (7th Cir.1993)). If the relevant documents confer on the trustees the authority to interpret the plan language and/or resolve disputes arising under it, then courts review trustees' determinations under a deferential standard. *See id.* at 670–71 (stating that the arbitrary and capricious standard was appropriate to review the trustees' decision that contributions were due because "the language of the [collective bargaining] agreement unambiguously delegates [to the trustees of the plan] the responsibility to resolve disputes over employer contributions to the trustees").

■ In the present case, the trust agreement conferred discretion on the trustees to decide questions arising under the Plan subject to judicial review under the arbitrary and capricious standard. (Borchardt Aff. Ex. A at XI–1.) Thus, I review the trustees' decision under the arbitrary and capricious standard. Under

such standard, I must uphold the trustees' decision if it was reasonable. *Hess v. Hartford Life & Acc. Ins. Co.,* 274 F.3d 456, 461 (7th Cir.2001); *see also Van Boxel v. Journal Co. Employees' Pension Trust,* 836 F.2d 1048, 1052 (7th Cir.1987) (stating that under arbitrary and capricious standard, decision may not be reversed merely for being wrong but only if it is unreasonable).

## III. DISCUSSION

■ A multi-employer plan may "enforce as written the contribution requirements" found in a collective bargaining agreement. *Bakery and Confectionary Union and Indus. Int'l Pension Fund v. Ralph's Grocery Co.,* 118 F.3d 1018, 1021 (4th Cir.1997). It is undisputed that under the 2000 agreement, the trustees could subject Woodman's to withdrawal liability if, when Woodman's terminated its participation in the Plan, the Plan's reserves were less than a specified amount.[1] It is also undisputed that Woodman's terminated its participation in the Plan at such a time. Therefore, it would appear that pursuant to the 2000 agreement, the trustees were authorized to subject Woodman's to withdrawal liability.

■ However, Woodman's argues that the 2000 agreement expired before it terminated its participation in the Plan, and that therefore the trustees lacked the legal authority to subject it to withdrawal liability. Woodman's contends that the 2000 agreement expired on May 24, 2003, but that it did not terminate its participation in the Plan until May 31, 2003. Woodman's argument fails because under the Plan's withdrawal liability rule, Woodman's withdrew from the Plan on May 24 not May 31, 2003. As is relevant to the present case, the rule states that an employer withdraws

---

1. Withdrawal liability is calculated to avoid shifting the cost of a withdrawing employer's pension obligation to other employers. *Cen-* *tral States, S.E. & S.W. Areas Pension v. Basic Am. Industries,* 252 F.3d 911, 913 (7th Cir. 2001).

from the Plan on "(i) the permanent cessation of the [employer's] obligation to contribute to the Plan ...." (Tobin Aff. Ex. A.) Moreover, when a collective bargaining agreement expires, "the employer no longer has an obligation to contribute." *Trs. of the Colo. Pipe Indus. Pension Trust v. Howard Elec. & Mech. Inc.*, 909 F.2d 1379, 1383 (10th Cir.1990); *see also Woodward Sand Co. Inc. v. W. Conference of Teamsters Pension Trust Fund*, 789 F.2d 691, 695 (9th Cir.1986) (same). In the present case, the 2000 agreement expired on May 24, 2003. Therefore, Woodman's obligation to contribute to the Plan also ceased on such date.

Woodman's fails to point to any document that changed the May 24, 2003 cessation date of its obligation to contribute to the Plan. The 2003 agreement did not address the issue. Moreover, even if the parties to the 2003 agreement had attempted to change the date, it is unlikely that they would have been able to do so. This is so because the Plan was a third-party beneficiary of the 2000 agreement. *Ossey v. Keystone Tube Co.*, No. 95C327, 1995 WL 505495, at *6 (N.D.Ill. Aug. 21, 1995) (citing *Malden Mills Indus., Inc. v. ILGWU Nat'l Ret. Fund*, 766 F.Supp. 1202, 1210–11 (D.Mass.1991)); *see also Ralph's Grocery Co.*, 118 F.3d at 1021. Further, unlike most third-party beneficiaries, which generally "must take contracts as they find them," ERISA plans are akin to "holders in due course in commercial law, generally entitled to enforce contracts without regard to understandings or defenses applicable to the original parties." *Ossey*, 1995 WL 505495, at *5. The special status of ERISA plans "limits the ability of employers to retroactively modify their obligations under a collective bargaining agreement." *Id.* (citing *Malden Mills Indus.*, 766 F.Supp. at 1210–11).

The fact that Woodman's May 3, 2003 payment to the Plan covered benefits through May 31 does not change the fact that Woodman's terminated its participation in the Plan on May 24. This is so because Woodman's was not obliged to contribute to the Plan after its May 24 expiration date. Moreover, "ERISA does not authorize contributions to a union welfare benefits plan other than in accordance with a written agreement, 29 U.S.C. § 1145." *Dugan v. R.J. Corman R.R. Co.*, 344 F.3d 662, 668 (7th Cir.2003). Title 29 U.S.C. § 186(c)(5)(B) "positively forbids payments to a union or union-related entity other than in accordance with a written agreement." *Id.*; 29 U.S.C. § 186(c)(5)(B). And, as stated, Woodman's points to no written agreement requiring or authorizing it to contribute to the Plan after May 24, 2003.

Thus, the trustees' authority to subject Woodman's to withdrawal liability terminated simultaneously with Woodman's participation in the Plan on May 24, 2003. Under such circumstances, I cannot say that the trustees were unauthorized to subject Woodman's to withdrawal liability. Neither the 2000 agreement nor any other document precluded the trustees from imposing withdrawal liability on an employer when their authority to impose such liability expired simultaneously with the employer's withdrawal from the Plan. Thus, the trustees' decision was not arbitrary and capricious and must be sustained.

## IV. CONCLUSION

For the reasons stated,

**IT IS ORDERED THAT** plaintiffs' motion for summary judgment is **GRANTED.**

**IT IS FURTHER ORDERED** that a telephonic status conference will be held on December 10, 2004 at 2:00 p.m. The court will initiate the call.